**Jennie IACONO, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 92–3096.**

United States Court of Appeals, Federal Circuit.

Sept. 15, 1992.

Mark J. Williams, Legal Aid Society, Brooklyn, N.Y., argued for petitioner.

Sean P. Murphy, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson, Deputy Director. Also on the brief were Vernon B. Parker, Gen. Counsel and Murray Meeker, Atty. Officer of Personnel Management, Washington, D.C., of counsel.

Before NIES, Chief Judge, ARCHER and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Jennie Iacono (Iacono) appeals the October 7, 1991 final decision of the Merit Systems Protection Board (Board), which denied review of the May 29, 1991 Initial Decision of the Administrative Judge, 50 M.S.P.R. 383. The Administrative Judge affirmed the Office of Personnel Management's (OPM) decision that denied Iacono's application for a survivor annuity. We affirm.

I.

Iacono married John J. Iacono on June 29, 1941. Mr. Iacono was a government employee in the Brooklyn Navy Yard from before his marriage until he retired due to disability in the early 1960's. The couple divorced in August of 1977. Mr. Iacono died on November 26, 1984 without remarrying.

Iacono has received treatment since 1978 for Manic–Depressive Illness. According to her physician, she has suffered from symptoms of sadness, moodiness, loss of appetite, loss of interest, feelings of hopelessness and helplessness, and impaired concentration. In an attempt to stabilize her condition, Iacono has been medicated with potent doses of powerful psychotropic drugs prescribed by her doctor. These drugs had side effects, including dizziness, edema, disorientation and light-headedness.

In October 1990, Iacono read an article in an American Association of Retired Persons publication that led her to believe she might have a right to benefits as the surviving spouse of a former federal employee. She sent a letter on November 6, 1990 to her former husband's employing agency, the Department of Labor (DOL), inquiring about such benefits. DOL forwarded the letter to OPM, which treated the letter as an application for former spouse annuity benefits under the Civil Service Retirement Spouse Equity Act of 1984, Pub.L. No. 98–615, 98 Stat. 3195, as amended by the Federal Employees Benefits Improvement Act of 1986, Pub.L. No. 99–251, § 201, 100 Stat. 14 (1986) and the Federal Employees' Retirement System Technical Corrections Act, Pub.L. No. 100–238, 101 Stat. 1744 (1988) (hereinafter "Spouse Equity Act").

In 1986, Iacono had become eligible to apply for surviving spouse annuity benefits under the Spouse Equity Act. *See* 5 U.S.C. § 8341 note (1988). In order to elect benefits under the Spouse Equity Act, Iacono had to meet the following criteria:

(ii) the former spouse was married to the employee ... for at least ten years during periods of creditable service ...;

(iii) the former spouse has not remarried before age fifty-five after September 14, 1978;

(iv) the former spouse files an application for the survivor annuity with the Office [of Personnel Management] on or before May 7, 1989; and

(v) the former spouse is at least fifty years of age on May 7, 1987.*

5 U.S.C. § 8341 note (1988).

Iacono did not file her application for a survivor annuity before the statutorily-imposed deadline of May 7, 1989. OPM initially and on reconsideration therefore denied Iacono's application because she failed to satisfy one of the qualifications for eligibility for a survivor annuity. Iacono argued before the Administrative Judge that her failure to meet the deadline eligibility requirement should be waived, because she was unaware of the filing deadline and was mentally disabled during the entire time period during which she could have filed her application. The Administrative Judge, citing *Office of Personnel Management v.*

---

* Although Section 4(b)(1)(B)(i) of Pub.L. No. 98–615 originally required the marriage be dissolved after September 14, 1978, Congress amended the statute initially to waive the divorce date requirement, so long as the other requirements are met, and no other former or surviving spouse is entitled to benefits under subchapter III of chapter 83 of title 5. *See*

Section 201(b)(4)(A) of Pub.L. No. 99–251, Federal Employees Benefits Improvement of 1986. Congress amended the Spouse Equity Act a second time by extending the original filing deadline of May 8, 1987 to May 7, 1989. *See* Section 127 of Pub.L. No. 100–238, the Federal Employees' Retirement System Technical Corrections Act.

*Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), stated that "the doctrine of equitable estoppel cannot be applied to estop OPM from enforcing the mandatory provision of a retirement statute under the circumstances of this case[,]" and affirmed OPM's denial of Iacono's application. In her brief in support of her unsuccessful petition for review of the initial decision, Iacono fashioned her waiver contention as a request for equitable tolling of the filing deadline under *Irwin v. Veterans Admin.,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

## II

■ In *Irwin,* the Supreme Court endorsed the proposition that the doctrine of equitable tolling could, under appropriate circumstances, be employed to toll statutes of limitation in cases brought against the government. The Supreme Court noted, however, that such equitable relief has been extended "only sparingly." 111 S.Ct. at 457.

In order for us to consider whether the circumstances of Iacono's case would warrant invocation of the doctrine of equitable tolling, we first must decide whether the filing deadline provision in the Spouse Equity Act is a tollable period of limitations, *see Branch v. G. Bernd Co.,* 955 F.2d 1574, 1582 (11th Cir.1992), rather than a required condition of eligibility that cannot be waived or tolled even though equity favors the applicant. *See Richmond,* 496 U.S. at 425–26, 110 S.Ct. at 2471–72.

The statutory deadline at issue here is similar to a statute of limitation in but one respect: both function as filing deadlines. However, the statutory deadline in the Spouse Equity Act does not await a specific event to start the deadline clock, as typically does a statute of limitation. Rather, the 1989 deadline served as the endpoint of the definite time period in which Congress would permit a specific class of potential annuitants to file applications. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. —, —, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991) (where the purpose of a time limitation is to serve as a

cutoff, equitable tolling principles do not apply to that period). Thus, the filing deadline in the Spouse Equity Act functions as a condition defining and closing the class.

■ OPM, in construing the statute, views the required filing period as a particular eligibility requirement. Referring to the statutory provision under which Iacono applied, the House Report states that the applicant is "entitled to a survivor benefit if several conditions are met", H.R.Rep. No. 1054, 98th Cong., 2d Sess. 26 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5540, 5557. Unless OPM, the agency charged with administering the Spouse Equity Act, patently misconstrues the intent of Congress, *compare Newman v. Love,* 962 F.2d 1008 (Fed.Cir.1992), OPM's statutory interpretation should be accepted. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). We thus conclude that the filing deadline in the Spouse Equity Act is not a period of limitations that can be equitably tolled. "[T]he duty of all courts [is] to observe the conditions defined by Congress for charging the public treasury." *Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (quoting *Federal Crop. Ins. Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947)). As the Supreme Court has recently reminded us, the federal courts must "assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good, and not according to the individual favor of Government agents or the individual pleas of litigants." *Richmond,* 496 U.S. at 428, 110 S.Ct. at 2473.

Iacono did not meet the statutory requirements for receiving a surviving spouse annuity. The decision of the Board is therefore

AFFIRMED.