Jorge Alberto HERNANDEZ–
MEZQUITA, Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 01–70112.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2002.

Filed June 20, 2002.

Jaime Jasso, Los Angeles, CA, for the petitioner.

Anthony Nicastro, United States Department of Justice, Washington, DC, for the respondent.

Before WARDLAW and W. FLETCHER, Circuit Judges, and WHYTE,* District Judge.

## OPINION

WILLIAM A. FLETCHER, Circuit Judge.

Jorge Alberto Hernandez–Mezquita, a native and citizen of El Salvador, entered the United States from Mexico without inspection on June 15, 1985. Hernandez–Mezquita filed an asylum application on April 7, 1997. The INS then initiated removal proceedings against him on April 11, 1997. He now petitions for review of the BIA's dismissal of his appeal from an Immigration Judge's order denying his application for cancellation of removal under § 203(b) of the Nicaraguan Adjustment and Central American Relief Act ("NA-CARA"), on the ground that he failed to file an application for asylum by April 1, 1990. Hernandez–Mezquita contends that NACARA's April 1, 1990 asylum-filing deadline violates equal protection and due process. He also objects to the BIA's failure to extend the Immigration Judge's grant of voluntary departure. We deny his petition.

## I. Background

On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996

("IIRIRA"). Pub.L. No. 104–208, 110 Stat. 3009. Among other things, IIRIRA replaced "suspension of deportation" relief under old INA § 244 with "cancellation of removal" under INA § 240A(b), 8 U.S.C. § 1229b(b), for aliens placed in proceedings on or after April 1, 1997. The pre-IIRIRA suspension of deportation provision gave discretion to the Attorney General to grant relief to a deportable alien who had been physically present in the United States for a continuous period of 7 years; who had been a person of good moral character; and whose deportation would result in extreme hardship to the alien *or* to his immediate family member, who was a U.S. citizen or lawful permanent resident. 8 U.S.C. § 1254(a) (1994). IIRIRA's more restrictive cancellation of removal provision requires 10 years of continuous physical presence, good moral character, no conviction for enumerated offenses, and "exceptional and extremely unusual hardship" to an immediate family member who is a U.S. citizen or lawful permanent resident. 8 U.S.C. § 1229b(b).

On November 19, 1997, Congress enacted the Nicaraguan Adjustment and Central American Relief Act ("NACARA"). Section 203(b) of NACARA permits certain aliens to apply for special-rule cancellation of removal, which provides relief in accordance with the more lenient terms of pre-IIRIRA suspension of deportation law. NACARA § 203(a) specifies five categories under which aliens can qualify to apply for special-rule cancellation of removal relief. For Salvadoran nationals like Hernandez–Mezquita, the first two categories are relevant. They extend eligibility for § 203(b) relief to an alien who is either

(I) ... a Salvadoran national who first entered the United States on or before

---

* The Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, sitting by designation.

September 19, 1990, and who registered for benefits pursuant to the settlement agreement in *American Baptist Churches, et al. v. Thornburgh* (*ABC*), 760 F.Supp. 796 (N.D.Cal.1991) on or before October 31, 1991, or applied for temporary protected status on or before October 31, 1991; [or]

(II) ... a Guatemalan or Salvadoran national who filed an application for asylum with the Immigration and Naturalization Service on or before April 1, 1990[.]

IIRIRA § 309(c)(5)(C)(i), *as amended by* NACARA § 203, Pub.L. No. 105–100 (1997).

The settlement agreement referred to in category (I) (hereinafter, the "*ABC* settlement") arose from a class action lawsuit filed against the Immigration and Naturalization Service, the Executive Office of Immigration Review, and State Department alleging, inter alia, that the government engaged in discriminatory treatment of asylum claims made by Guatemalans and Salvadorans. The *ABC* settlement provides that eligible class members who register for benefits and apply for asylum by the agreed-upon deadlines (which were initially defined in the settlement agreement but later extended)[1] are entitled to a de novo asylum interview and adjudication. The settlement agreement also contains special provisions regarding employment authorization and detention of eligible class members. *See American Baptist Churches v. Thornburgh,* 760 F.Supp. 796 (N.D.Cal.1991).

The relationship between category (I) and the *ABC* settlement is express. To the extent Congress wanted to extend NA-

CARA's relief to the same class of Salvadorans eligible for *ABC* settlement benefits, Congress rationally incorporated the eligibility requirements under the *ABC* settlement as pre-requisites to qualify for § 203(b)'s special "cancellation of removal" relief. Hernandez–Mezquita does not argue that he qualifies under category (I) because, it appears, he did not register for *ABC* settlement benefits or TPS status by October 31, 1991. Nor does he appear to challenge the constitutionality of the limitations in category (I). Rather, he challenges the constitutionality of category (II)'s limitation on eligibility for § 203(b) relief to those who filed for asylum on or before April 1, 1990.

## II. Equal Protection Objection to NACARA

■ Hernandez–Mezquita claims that the April 1, 1990 asylum-filing deadline under category (II) of § 203(a), as a prerequisite for eligibility for special-rule cancellation of removal under § 203(b), violates equal protection by treating similarly situated applicants for relief differently. He argues that the rule creates an irrational distinction among aliens of the same class—Salvadorans who (1) fled their home country for reasons of oppression and civil strife, (2) arrived in the United States before April 1, 1990, and (3) have applied for asylum in the United States—based solely on whether they filed an asylum application before April 1, 1990.

■ To win his equal protection challenge, Hernandez–Mezquita must show that the classification is "wholly irrational." *Sudomir v. McMahon,* 767 F.2d 1456, 1464

---

1. The revised *ABC* settlement deadline for Salvadoran class members—all Salvadorans physically present in the United States on or before September 19, 1990—to have registered for ABC benefits, by either submitting an ABC registration form or applying for

Temporary Protected Status (TPS), is October 31, 1991. The revised *ABC* settlement deadline for Salvadoran class members to have filed an asylum application is January 31, 1996.

(9th Cir.1985). " 'Line-drawing' decisions made by Congress or the President in the context of immigration and naturalization must be upheld if they are rationally related to a legitimate government purpose." *Ram v. INS*, 243 F.3d 510, 517 (9th Cir. 2001). Challengers have the burden to negate "every conceivable basis which might support [a legislative classification] . . . whether or not the basis has a foundation in the record." *Heller v. Doe*, 509 U.S. 312, 320–21, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (citation omitted).

In its brief and argument to us, the government contended that the asylum-filing requirement and the April 1, 1990 cutoff date in category (II) of NACARA § 203 are related to the government's goal of protecting beneficiaries of the *ABC* settlement agreement. We are unable to see the basis for the government's contention. There is no apparent relationship between the specific requirements of category (II) and the terms of the *ABC* settlement. Among other things, category (I) specifically mentions the settlement; category (II) does not. Moreover, the government fails to point to any rational connection between the April 1, 1990 filing cutoff date of category (II) and the *ABC* settlement, which only requires that Salvadoran class members file an asylum application on or before January 31, 1996.

Nevertheless, we find that Hernandez–Mezquita's equal protection claim fails. Hernandez–Mezquita makes two arguments. First, he objects to the prerequisite under category (II) of filing an asylum application *at all*, on the ground that asylum and cancellation of removal relief are wholly unrelated. Although he is correct that the legal requirements for asylum and cancellation of removal relief are different—asylum requires "a fear of persecution" while cancellation of removal requires fulfillment of the aforementioned three-part test—the two forms of relief do

have a logical relationship for purposes of NACARA. One of the principal goals of NACARA was to mitigate the effects of IIRIRA's changes for the "thousands of Central Americans . . . who came to the United States because their lives and families had been torn apart by war and oppression." 143 Cong. Rec. S12258–01, S12261 (daily ed. Nov. 9, 1997) (statement of Sen. Abraham). In particular, Congress was concerned with Salvadorans who came to the United States during the 1980s "because they feared death at the hands of the leftist guerrillas . . . or extremist death squads." *Id.* Since their arrival, beginning in the early 1980s, the United States government has assisted these aliens (at least those who arrived in or prior to 1990) in seeking asylum relief. *See id.* Thus, Congress had a rational basis under category (II) for providing relief only to those Salvadorans who have applied for asylum, since an asylum application would serve as an indicator of the type of suffering with which Congress was concerned.

Second, Hernandez–Mezquita argues that the specific April 1, 1990 cutoff date under category (II) for filing an asylum application is irrational. The April 1, 1990 cutoff date, however, could quite reasonably be based on the fact that IIRIRA became effective on April 1, 1997. Since the old "suspension of deportation" rules provided relief to aliens who had been present in the United States for seven years, those who had arrived prior to April 1, 1990 would have fulfilled the seven-year presence requirement by April 1, 1997 (IIRIRA's effective date). Congress may have been concerned with the unfairness of applying IIRIRA's more restrictive rules to Salvadorans who failed to apply for suspension of deportation before April 1, 1997, but who otherwise qualified for such relief under pre-IIRIRA law. Alternatively, the April 1, 1990 cutoff might have resulted from Congress's natural "line-

drawing" process in choosing a date to limit relief to those aliens who fled El Salvador during the worst period of civil strife. In either case, the requirement of filing an asylum application by the deadline serves a rational evidentiary purpose in identifying those who had actually entered prior to April 1, 1990, and in identifying those aliens who immediately indicated a desire to stay in the United States because of a genuine threat of persecution in El Salvador. Thus, we hold that the April 1, 1990 filing requirement has a rational basis.

## III. Due Process Objection to NACARA

Hernandez–Mezquita also contends that NACARA's imposition of the April 1, 1990 asylum-filing deadline as a pre-condition to special-rule cancellation of removal violates due process. To sustain a due process challenge, Hernandez–Mezquita must show that his ability to apply for special-rule cancellation of removal is a qualifying liberty interest of which he was deprived. *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

The difficulty with Hernandez–Mezquita's contention is that the very liberty interest he asserts to have been taken away by NACARA was granted by that same statute. It is true that NACARA § 203 made special-rule cancellation of removal available to certain categories of Salvadoran refugees, and that Hernandez–Mezquita is not in one of those categories. But until the passage of NACARA, there was no special-rule cancellation of removal for anyone (including Hernandez–Mezquita). Hernandez–Mezquita cannot contend that NACARA § 203 violated due process by depriving him of a right he never had.

\* Mike Mullin replaced Gary Gibson as Warden of the Oklahoma State Penitentiary effective

## IV. Voluntary Departure

Finally, Hernandez–Mezquita claims that the BIA abused its discretion by dismissing his appeal without extending the Immigration Judge's grant of voluntary departure. We lack jurisdiction to review that decision. *See* 8 U.S.C. § 1252(a)(2)(B) ("Notwithstanding any other provision of law, no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c [voluntary departure], or 1255[.]") (brackets added); 8 U.S.C. § 1229c(f) ("No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b) of this section, nor shall any court order a stay of an alien's removal pending consideration of any claim with respect to voluntary departure.").

PETITION DENIED.