**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE EULALIO BALAM-CHUC,
                     *Petitioner,*

          v.

MICHAEL B. MUKASEY, Attorney
General,

                     *Respondent.*

No. 06-72887

Agency No.
A79-806-794

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 27, 2008—Seattle, Washington

Filed October 24, 2008

Before: Thomas G. Nelson, Michael Daly Hawkins, and
Jay S. Bybee, Circuit Judges.

Opinion By Judge Bybee

14941

**COUNSEL**

Carol L. Edward, Eric P. Lin, and Shannon M. Underwood, Law Offices of Carol L. Edward & Associates, P.S., Seattle, Washington, for the petitioner.

Peter D. Keisler, Stephen J. Flynn, and Dalin R. Holyoak, U.S. Department of Justice, Civil Division, Washington, D.C., for the respondent.

**OPINION**

BYBEE, Circuit Judge:

Petitioner Jose Eulalio Balam-Chuc ("Balam-Chuc") seeks review of a dismissal of his appeal to the Board of Immigration Appeals ("BIA"). Balam-Chuc argues that the BIA improperly decided that the April 30, 2001, filing deadline in § 245(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(i), is a statute of repose, and is thus not subject to equitable tolling for a claim of ineffective assistance of counsel. He further claims that his counsel's ineffective assis-

tance constitutes a due process violation under the Fifth Amendment. For the reasons set forth below, we deny his petition.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  *The LIFE Act and Amendments*

The Legal Immigration Family Equity Act ("LIFE Act"), INA § 245 (1999) (codified at 8 U.S.C. § 1255 (1999)), was enacted, in part, to provide a mechanism whereby the spouses and minor children of lawful permanent residents could apply more quickly for immigrant visas. *See* 146 CONG. REC. S11851 (Dec. 15, 2000) (statement of Sen. Kennedy).[1] Congress established a system of temporary visas in order to provide "a speedy mechanism for the spouses and minor children of U.S. citizens to obtain their immigrant visas in the U.S., rather than wait for long periods of time outside the U.S." *Id.* The LIFE Act also provided a method whereby an alien that had entered the United States without inspection or parole, but who was otherwise eligible for an immigrant visa, could apply to the Attorney General for an adjustment of status. 8 U.S.C. § 1255(i) (1999). This adjustment of status—to that of alien lawfully admitted for permanent residence—would allow the alien to remain in the United States, thus avoiding the undesirable alternative of forcing aliens to leave their families in the United States while they applied for a visa abroad. To qualify for this status adjustment, the alien had to file a petition for classification under 8 U.S.C. § 1154 on or before January 14, 1998, and pay a $1000 fee. *Id.*

---

[1]Because the LIFE Act amendments were created outside of the ordinary Committee process, the Chairman and Ranking Member of the Subcommittee on Immigration of the Senate Committee on the Judiciary—Senators Abraham and Kennedy—provided a joint memorandum concerning the amendments. Much of the legislative history referenced here comes from this joint memorandum, as introduced by Senator Kennedy.

In 2000, Congress amended the LIFE Act to expand the class of beneficiaries who could apply for adjustment of status under INA § 245(i). Among other things, Congress moved the deadline for filing a visa petition from January 14, 1998, to April 30, 2001, for all aliens present in the United States as of the statute's date of enactment. *See* 8 U.S.C. § 1255(i). Members of Congress encouraged the Immigration and Naturalization Service ("INS") to "ensure that all potentially eligible persons have an opportunity to qualify for 245(i)." 146 CONG. REC. at S11851 (Dec. 15, 2000) (statement of Sen. Kennedy). Senator Kennedy recommended that, if necessary, "INS should accept petitions and applications before the April 30, 2001 sunset date that do not contain all necessary supporting documents, and allow additional documents to be filed after the deadline." *Id.* Thus, while members of Congress encouraged flexibility, for an alien to take advantage of the adjustment of status provision of INA § 245(i) after the amendment—and avoid returning to his or her country of citizenship—the alien must have been present in the United States on December 21, 2000, and must have petitioned the Attorney General for an immigration visa prior to April 30, 2001.

## B.  *Balam-Chuc's Application*

Balam-Chuc is a native citizen of Mexico who entered the United States without inspection or parole around August 1997 at or near San Ysidro, California. On May 8, 2000, in Tacoma, Washington, he married Rebekah A. Hinman ("Mrs. Balam-Chuc"), a United States citizen. The Balam-Chucs have two children, both U.S. citizens, currently ages six and three.

In 2001, Balam-Chuc worked to solidify his immigration status in the United States. Mrs. Balam-Chuc hired the DeDamm Law Firm to file a family visa petition and application for adjustment of status on behalf of her husband.[2] She

---

[2]Many of the events summarized here come from facts laid out in a letter dated February 19, 2003, from Mrs. Balam-Chuc to the Department of

signed and dated an Immediate Relative Visa Petition, Form I-130, on March 20, 2001, and submitted it to her attorney with the appropriate documents and fees. Mindful of the April 30th deadline, Mrs. Balam-Chuc called the law firm on March 30, 2001, and she was assured that the petition would be hand-delivered on time.

INS, however, did not receive the I-130 petition until June 13, 2001, almost a month and a half after the statutory deadline. The Balam-Chucs learned that the petition had been filed late when Balam-Chuc appeared for his adjustment interview in July 2002. Balam-Chuc turned to the DeDamm Law Firm, but no one could provide proof that the petition had been submitted prior to the deadline. Gabriel Banfi, who supervised the preparation of the I-130, claims that a DeDamm paralegal submitted the application to the INS (now the Department of Homeland Security ("DHS")) prior to April 30, 2001. However, he acknowledges that the application might have been returned because it was not accompanied by the appropriate filing fee, as required by 8 C.F.R. § 103.2(a)(1). Regardless of Banfi's claims, neither the Balam-Chucs nor anyone at the firm could provide proof that the petition had been submitted prior to the deadline, and on appeal, Balam-Chuc apparently concedes that he cannot provide evidence of a timely filing. Although the INS eventually approved the I-130 petition on October 14, 2002, it ultimately denied Balam-Chuc's application for adjustment of status based on the untimely filing of the corresponding petition.

C. *Removal Proceedings*

Two years later, on May 10, 2004, DHS served Balam-Chuc with a Notice to Appear, charging that he was subject

Immigration—a letter written almost two years after the deadline for filing the visa petition. Although the letter was attached as an exhibit to Balam-Chuc's appeal to the BIA, it was not submitted in the form of an affidavit or sworn statement. *See* 28 U.S.C. § 1746. The accuracy of these events may be in dispute. For purposes of this opinion, we relate the background facts as Balam-Chuc has presented them.

to removal under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien who was present without having been admitted or paroled. On August 18, 2004, Balam-Chuc appeared with new counsel before the Immigration Judge ("IJ") in Seattle. At the hearing, Balam-Chuc admitted to the allegations lodged by DHS and conceded removability. He argued, however, that he should be eligible for an adjustment of status under the LIFE Act amendment because he had in fact filed the petition on time, and in the alternative, the statute of limitations should have been tolled due to the ineffective assistance of his prior counsel.

On January 20, 2005, the IJ decided that Balam-Chuc had failed to establish that he had timely filed the appropriate application and filing fee. Citing our decision in *Munoz v. Ashcroft*, 339 F.3d 950 (9th Cir. 2003), the IJ held that because INA § 245(i) was a statute of repose—and not a statute of limitations—the deadline was not subject to equitable tolling due to ineffective counsel. Because he failed to file his petition on or before April 30, 2001, Balam-Chuc was thus ineligible for adjustment of status under INA § 245(i). Accordingly, the IJ sustained the charge of removability.

Balam-Chuc appealed the IJ's decision to the BIA, arguing that the IJ incorrectly classified the deadline as a statute of repose instead of a statute of limitations and that the statute should be tolled due to ineffective assistance of counsel. He further argued that the BIA should adjudicate the application *nunc pro tunc*. The BIA rejected these arguments, finding that the IJ properly determined that INA § 245(i) was a statute of repose not subject to equitable tolling. The Board noted that the IJ and the BIA might also lack the authority to toll the filing deadline, as only DHS currently has jurisdiction over visa petitions. It further held that *nunc pro tunc* relief was improper and dismissed the appeal.

## II.  ANALYSIS

Balam-Chuc argues on appeal that the BIA erred in determining that the April 30, 2001, deadline was a statute of repose not subject to equitable tolling. He asserts that the deadline is a statute of limitations which should be equitably tolled due to ineffective assistance of counsel. He further argues that the ineffective assistance of his counsel violated his due process rights.[3] Finally, Balam-Chuc challenges the BIA's statement that it might lack authority to toll the statute of limitations merely because DHS now oversees the agency process for accepting visa petitions.

"On a petition for review, the BIA's decisions regarding purely legal questions are reviewed de novo, 'giving deference to the BIA's interpretation unless that interpretation is contrary to the plain and sensible meaning of the statute.' " *Almaghzar v. Gonzales*, 457 F.3d 915, 920 (9th Cir. 2006) (quoting *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004)). "We review the BIA's findings of fact, including credibility findings, for substantial evidence and must uphold the BIA's finding unless the evidence compels a contrary result." *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003). We review due process claims de novo. *Lara-Torres v. Ashcroft*, 383 F.3d 968, 972 (9th Cir. 2004).

As discussed below, our precedent compels the conclusion that the deadline imposed by Congress under INA § 254(i) constitutes a statute of repose, not subject to equitable tolling. We also find that ineffective assistance of counsel in preparing and filing a petition does not implicate the Fifth Amendment. Because we find no error in the merits of the BIA's decision, we do not discuss the remedies among DHS and INS that were otherwise available to the BIA.

---

[3]Balam-Chuc does not contest the BIA's finding that it could not adjudicate his application *nunc pro tunc*.

A. *Statute of Limitations or Statute of Repose*

**[2]** "There is a crucial distinction in the law between 'statutes of limitations' and 'statutes of repose.' Statutes of repose are not subject to equitable tolling." *Munoz v. Ashcroft*, 339 F.3d 950, 957 (9th Cir. 2003). Whether INA § 245(i) is a statute of repose or a statute of limitations subject to equitable tolling is a question of first impression for the federal circuits. However, we have analyzed a number of other deadlines imposed by Congress to determine whether or not they constitute statutes of limitation or repose. *Compare*, *Albillo-De Leon v. Gonzales*, 410 F.3d 1090, 1098 (9th Cir. 2005) (finding that § 203(c) of the Nicaraguan Adjustment and Central American Relief Act ("NACARA") was a statute of limitations subject to equitable tolling), *with Munoz*, 339 F.3d at 956-57 (finding that § 203(a) of NACARA was a statute of repose not subject to equitable tolling), *and Carrillo-Gonzalez v. INS*, 353 F.3d 1077, 1079 (9th Cir. 2003) (holding that equitable tolling did not apply to the congressionally-mandated, one-year deadline of the Diversity Immigration Visa Lottery Program for 1997).

"Statutes of limitation are primarily designed to assure fairness to defendants and to promote the theory that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Albillo-De Leon*, 410 F.3d at 1095 (internal quotations and citations omitted). In essence, "such limitations relieve courts of the burden of adjudicating stale claims when a plaintiff has slept on his rights." *Id*.

**[2]** On the other hand, a statute of repose is a "fixed, statutory cutoff date, usually independent of any variable, such as claimant's awareness of a violation." *Munoz*, 339 F.3d at 957. "A statute of repose cuts off a cause of action at a certain time irrespective of the time of accrual of the cause of action." *Weddel v. Sec'y of Health & Human Servs.*, 100 F.3d 929,

931 (9th Cir. 1996). Perhaps the most distinguishing characteristic of a statute of repose is that it establishes "an outer date for bringing an action" instead of a variable period of time during which a plaintiff must assert her claim. *Id.* Thus, we have noted that statutes of repose act " 'as the endpoint of the definite time period in which Congress would permit a specific class of potential annuitants to file applications,' " which function " 'as a condition defining and closing the class.' " *Id.* (quoting *Iacono v. Office of Pers. Mgmt.*, 974 F.2d 1326, 1328 (Fed. Cir. 1992)).

For example, in *Munoz* we decided that deadlines imposed by NACARA § 203(a) constitute a statute of repose. 399 F.3d at 957. That statute imposed an April 1, 1990, cutoff date for asylum applications from Guatamalan nationals and a December 31, 1991, cutoff date for special rule cancellation applications from Guatamalan nationals who had registered for certain settlement benefits. NACARA § 203(a), Pub. L. No. 105-100, 111 Stat. 2160. We held that § 203(a) constituted a statute of repose because the deadlines at issue were "fixed by statute and unrelated to any variable" and through the "retroactive cutoff dates, Congress closed the class via a statute of repose." *Munoz*, 339 F.3d at 957.

**[3]** As in NACARA § 203(a), here Congress has created a fixed statutory cutoff date, independent of any variable, and the deadline effectively closes the class of individuals entitled to special treatment under a statutory initiative. The statute requires aliens to file a visa petition "on or before April 30, 2001" to qualify for adjustment of status. INA § 245(i). This is a specific date that marks the close of a class, not a general period based on discovery of an injury or accrual of a claim. Our decision in *Munoz* compels the conclusion that INA § 245(i) is a statute of repose.

Balam-Chuc relies on our decision in *Albillo-De Leon v. Gonzales*, 410 F.3d 1090 (9th Cir. 2005), to support his position that § 245(i) is a statute of limitations. In *Albillo-De*

*Leon*, we interpreted § 203(c) of NACARA—not to be confused with § 203(a) discussed above—and found that the deadline constituted a statute of limitations. 410 F.3d at 1098. Section 203(c) provides a period for aliens to file a motion to reopen removal or deportation proceedings if they become eligible for relief under NACARA's other provisions. NACARA § 203(c), Pub. L. No. 105-100, 111 Stat. 2160. The statute provides that "[t]he period shall begin not later than 60 days after the date of the enactment of [NACARA] and shall extend for a period not to exceed 240 days," giving the Attorney General final discretion to fix the date. *Id.* In *Albillo-De Leon* we distinguished *Munoz* based on a combination of three unique factors: (1) section 203(c) served a limited purpose and applied to a specific, small group of people that had already complied with the deadlines imposed by § 203(a), (2) the time deadline did not "identify a specific cutoff date by which a petitioner must file his or her motion to reopen proceedings," and (3) the legislative history specifically indicated an intent to subject the soft deadline to equitable tolling principles. 410 F.3d at 1097-98.

None of these three circumstances is present here. Rather, § 245(i) applies to all aliens who filed a visa petition before April 30, 2001, and were present in the United States on the statute's date of enactment. This can hardly be characterized as a statutory provision with a "limited purpose" that applies to a specific, small group of people. *See Albillo De-Leon*, 410 F.3d at 1097. Unlike NACARA § 203(a), which did not impose a specific cutoff date, INA § 245(i) requires all aliens who wish to apply for an adjustment of status to submit a visa petition by a hard deadline—April 30, 2001. Finally, there is no indication in the legislative history that Congress specifically intended the courts to apply tolling principles to § 245(i). Rather, the legislative history appears to recommend that the *agencies* responsible for enforcing the statute should accept petitions filed after the deadline in the exercise of their executive discretion. *See* 146 CONG. REC. S11851 (Dec. 15, 2000) (statement of Sen. Kennedy). A brief reference in the

legislative history recommending agency discretion does not give this court authority to construe a strict cutoff deadline as a statute of limitations. Thus, *Albillo-De Leon* does not apply here, and we are bound by our decision in *Munoz.*

B.  *Due Process Right to Effective Assistance of Counsel*

**[4]** Balam-Chuc also argues that his counsel's ineffective assistance in preparing and filing his visa petition constitutes a deprivation of due process. "Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Lopez v. INS*, 775 F.2d 1015, 1017 (9th Cir. 1985).

**[5]** However, we have established that due process rights to assistance of counsel do not extend beyond the fairness of the hearing itself. *Lara-Torres v. Ashcroft*, 383 F.3d 968, 973-76 (9th Cir. 2004). For example, in *Lara-Torres*, the petitioners faced removal because their attorney had taken an erroneous legal strategy and given faulty legal advice. *Id.* at 973. The petitioners brought a challenge based on ineffective assistance and a violation of due process. *Id.* We dismissed the petition because

> [n]one of [Petitioner's] purported deficiencies pertain to the actual substance of the hearing (e.g., evidence presented or omitted, arguments raised or overlooked), let alone call the hearing's fairness into question. The basic "unfairness" of which the Petitioners complain is that they never would have been subject to removal proceedings had it not been for their reliance on [their lawyer's] unfortunate immigration-law advice. This "unfairness," however, did not taint the "fairness" of the hearing.

*Id.* at 973. Indeed, in order to find ineffective assistance of counsel in this context we held that the legal services must be rendered "*while proceedings were ongoing.*" *Id.* at 974.

**[6]** Here, Balam-Chuc's attorney failed to properly file a visa petition within the statutorily required deadline. This deficiency does not relate to the substance of an ongoing hearing; in fact, no proceedings had begun at the time the alleged attorney misconduct took place. Thus, as in *Lara-Torres*, we reject Balam-Chuc's attempt "to cast such an expansive and amorphous Fifth Amendment due process right that encompasses legal assistance removed from the actual process itself." *Id.* at 975. Although the failings of Balam-Chuc's attorney in this case have resulted in terrible consequences for him and his family, the Fifth Amendment simply does not apply to the preparation and filing of a petition that does not relate to the fundamental fairness of an ongoing proceeding.

## III. CONCLUSION

Balam-Chuc filed a petition for an immigrant visa after April 30, 2001, the deadline imposed by Congress to receive an adjustment of status under the LIFE Act amendments. The BIA properly concluded that the deadline imposed by Congress operates as a statute of repose, for which equitable tolling based on ineffective assistance of counsel is not available. In addition, the failure of Balam-Chuc's counsel to comply with the statutory filing requirements did not implicate the Fifth Amendment because they did not affect the fundamental fairness of any ongoing hearing. Balam-Chuc has no remedy in this court.

We recognize that this is a tragic result for Balam-Chuc and his family. We echo our observations from *Munoz*, where a statute of repose forced the petitioner to return to his country of origin to obtain a visa.

> We deny [the] petition because that is the proper conclusion under the statute and relevant precedent.

> But the result . . . appears pointless and unjust. . . .
> We are unable to grant [the] petition, but we hope
> that appropriate officials within the executive
> branch, or possibly Congress, will take a careful look
> at this case and, if the facts are truly as they appear
> to us, consider whether removal of [the petitioner] is
> really the just and proper result here.

339 F.3d at 958-59.

Similarly, as a result of the statute and relevant precedent in this case, Balam-Chuc will be forced to leave his wife and two young children to return to Mexico, where he must start the process of applying for a visa through the Mexican consulate, all because his attorney failed to take appropriate action in filing his application with the INA. It seems especially counterintuitive that DHS would insist on bringing charges against Balam-Chuc when Congress's specific directive in passing the statute was to encourage agencies to allow these very families to stay together. We hope that DHS will look past any technical flaws in Balam-Chuc's application and follow Congress's guidance to exercise its discretion in an equitable manner. However, it is not within our prerogative to ignore our prior precedent, unilaterally amend a statute duly passed by the legislative branch, or interfere with the legitimate exercise of executive discretionary power, even to provide Balam-Chuc with an avenue for remaining with his family.

Despite the apparent equities weighing to the contrary, the petition for review must be DENIED.