Melanie L. MUWWAKKIL, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 93–3490.

United States Court of Appeals,
Federal Circuit.

March 8, 1994.

Melanie L. Muwwakkil, submitted Pro Se.

Carol L. Wallack, Attorney, Commercial Litigation Branch, Department of Justice, of Washington, D.C., submitted for respondent. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director and Jeanne E. Davidson, Assistant Director. Also on the brief were

Lorraine Lewis, General Counsel and Murray H. Meeker, Attorney, Office of General Counsel, Office of Personnel Management, of counsel.

Before ARCHER, PLAGER, and SCHALL, Circuit Judges.

PLAGER, Circuit Judge.

This case, which comes to us from a *pro se* litigant, raises an important question regarding the duty of OPM under the statutes requiring former-spouse notification. On reconsideration of its initial decision, the Office of Personnel Management (OPM) denied Melanie L. Muwwakkil's (Muwwakkil) application for benefits, based on the employment of her former spouse, James A. Lee (Lee), under the Civil Service Retirement Act (CSRA). The Merit Systems Protection Board (Board), Dkt. No. DC0831930263–I–1, affirmed the decision of OPM.[1] She appealed. We *vacate* and *remand.*

## BACKGROUND

Muwwakkil was married to Lee; they had two sons, now teenagers. Muwwakkil and Lee were divorced on December 2, 1988. The divorce decree provided, *inter alia,* that (i) Muwwakkil was granted custody of the minor children, Jelani A. Lee and Jawara A. Lee; (ii) Lee was to contribute $400 per month child support; and (iii) there were no property rights to be adjudicated. At the time, Lee had been an employee of the government of the District of Columbia for almost twenty years, and a participant in the federal Civil Service Retirement System.[2] In August of 1991, Lee resigned from his job with the District, and applied for a lump-sum payment of the retirement contributions that had been withheld from his salary.

On the CSRS form "Application for Refund of Retirement Deductions" which Lee completed there were two questions dealing with marital status. Question 14 asked Lee whether he was then married. In response, Lee stated that he was not, which was correct. Question 15 on the form then asked Lee whether he had been divorced "on or after May 7, 1985." Lee responded in the negative, which was not correct. If Lee had answered Question 15 correctly, the form then required him to identify Muwwakkil as a living former spouse from whom he was divorced. On October 11, 1991, OPM approved Lee's application for lump sum payment, and made the requested payment to Lee in the amount of about $25,000. No notification was given to Muwwakkil beforehand, as required by statute.[3]

On July 8, 1992, Lee died. Upon learning of Lee's death, Muwwakkil applied to OPM for death benefits on behalf of herself and her two children based on Lee's period of employment with the District of Columbia. On October 27, 1992, OPM sent Muwwakkil a form letter noting that "All retirement deductions were refunded to the deceased. No benefits are payable." A penned marginal note said, "All deductions were refunded on 10–11–91."

By letter dated November 9, 1992, Muwwakkil asked OPM to reconsider its decision to the extent it related to her application on behalf of her children, setting out in some detail the history of the case. On January 15, 1993, OPM by letter affirmed the initial decision. In its letter, OPM informed Muwwakkil that no *annuity* benefits were payable to her children because they did not meet the eligibility requirements of 5 U.S.C. § 8341(e)(2) (1988). That statute provides, in pertinent part, that if

---

1. The Administrative Judge (AJ) rendered an initial decision on May 21, 1993. Pursuant to 5 C.F.R. § 1201.113 (1993), that decision became the final decision of the Board on June 25, 1993, when Muwwakkil failed to file a petition for review.

2. Employees of the District are eligible for participation in the federal retirement system. 5 U.S.C. § 8331(1)(G) (1988).

3. § 2(5)(B) of the Civil Service Retirement Spouse Equity Act of 1984 (codified at 5 U.S.C. § 8342(j)(1) (1988)):

   Payment of the lump-sum credit under subsection (a) of this section—
   (A) may be made only if any current spouse and any former spouse of the employee or Member are notified of the employee or Member's application. . . .

an employee ... dies after completing at least 18 months of civilian service, or an employee ... dies after retiring under this subchapter, and is survived by a spouse or a former spouse who is the natural or adoptive parent of a surviving child of the employee ..., that surviving child is entitled to an annuity....

OPM explained that no such benefits were payable to her children because at the time of his death James Lee was not an "employee" and, having resigned rather than having retired from employment with the D.C. government, Lee did not die after retiring. OPM pointed out that annuity benefits would only be payable to his children "if Mr. Lee had continued his employment to the date of death, or if he was separated for Civil Service retirement."

With regard to the failure to give the required statutory notice, OPM explained that, although Lee "incorrectly stated on his Application for Refund of Retirement Deductions that he had not been divorced, this would not apparently have effected (sic) payment of the refund." OPM then added, "his Civil Service retirement contributions were refunded to him prior to his death, so there is no lump sum amount payable to the children." With regard to Muwwakkil herself, OPM noted that the divorce decree did not provide her with any portion of Lee's retirement contributions—"the decree states that there are no property rights to be adjudicated."

Muwwakkil then appealed to the Board. On her appeal form, Muwwakkil stated that she was appealing OPM's "[d]enial of survival benefits for the sons of James A. Lee." Before the Board, Muwwakkil argued that she was entitled to the relief which she sought because she had not been notified of Lee's application for refund of his retirement deductions. She wrote,

The Office of Personnel Management did not properly check the records of Mr. Lee before refunding him his retirement. Mr. Lee falsified the application by stating that he had never been married. Mr. Lee's reluctance to state the truth should have been challenged by OPM and a discussion held with Mr. Lee prior to the release of

his retirement funds ... What is the purpose of requiring the applicant to answer the question "Have you ever been married?" if the applicant does not have to report the truth and if the question is irrelevant to applicants (sic) applying for retirement refund.

Addressing OPM's observation that the divorce decree failed to state that she was to receive any portion of his retirement contributions, Muwwakkil wrote,

At the time of filing for my divorce I received advice from staff and employees of the Family Division–Domestic Relations Branch of DC Superior Court. I was not informed at the time that an attachment of [retirement funds] could be made. With knowledge of Mr. Lee's payment history I definitely would have included such a clause in the divorce decree.

In the decision that gave rise to this appeal, the Board affirmed OPM's reconsideration decision. In so doing, the Board agreed with OPM that receipt of retirement deductions voids all rights to an annuity based on the service upon which the refund is based. In addition because the deceased's retirement deductions were refunded to him, they were not available as a lump-sum credit for payment to his surviving children.

The Board acknowledged that Muwwakkil should have been notified prior to the refund of the retirement contributions made by Lee, as required by statute, but "the responsibility for making that notification, in the first instance, was her former husband's," citing OPM regulation § 831.2007(b)(2), (c). The Board further considered that she had failed to prove that she or her children were entitled to any statutory or regulatory relief as a result of not being notified.

## DISCUSSION

### I.

Our task is to determine whether the Board's decision is

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence

. . . .

5 U.S.C. § 7703(c) (1988).

On appeal, Muwwakkil argues that the disbursement to her former husband, James Lee, was improper because she was not provided with prior notice as required by § 2(5)(B) of the Civil Service Retirement Spouse Equity Act of 1984 (codified at 5 U.S.C. § 8342(j) (1988)), and thus the Board erred. She claims that OPM is "responsible to provide relief to Mr. Lee's surviving dependents," and that we should award "at least half of Mr. Lee's retirement benefits to his dependant children...."

■ The plain language of the statute requires that notice be given to a former spouse prior to disbursement of a lump-sum payment of the retirement contributions of the other:

(j)(1) Payment of the lump-sum credit under subsection (a) of this section—

(A) may be made only if any current spouse and *any former spouse of the employee or Member are notified of the employee or Member's application*.... (Emphasis added).

Pub.L. No. 98–615, § 2(5)(B), 98 Stat. 3201, 3202 (1984). When statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1579, 16 USPQ2d 1614, 1618 (Fed. Cir.1990).

■ The Board acknowledged that Muwwakkil was correct in claiming that, by statute and regulation, she should have been notified prior to the refund of the retirement deductions to Lee. *See* 5 C.F.R. § 831.2007 (1993). The Board also determined, however, that responsibility for making that notification was, in the first instance, her former husband's.

The Spouse Equity Act provides, in pertinent part, that "[n]otification of a spouse or former spouse ... shall be made in accordance with such requirements as [OPM] shall by regulation prescribe." 5 U.S.C. § 8342(j)(2) (1988). OPM has prescribed notification requirements in 5 C.F.R. § 831.-2007(b)(2), (c) (1993). Pursuant to that regulation, a person who is applying for the refund of retirement deductions has the obligation of certifying whether he or she has a current or former spouse who is subject to the notification requirement, 5 C.F.R. § 831.-2007(b)(2). Such a person also has the obligation of presenting proof of notification to any current or former spouse in the form of a witnessed statement by the current or former spouse that he or she has been informed of the application for a refund and of the consequences of the refund on the current or former spouse's entitlement to an annuity, 5 C.F.R. § 831.2007(c).

Based upon OPM's regulation, the Board apparently concluded that, once James Lee had answered Questions 14 and 15 on the refund application form in the negative, OPM had no obligation to inquire further in the matter in order to assure compliance with the notification requirement of the statute. Put another way, the Board apparently concluded that OPM was not required to look behind Lee's negative answers in the application form in order to determine whether Lee had a current or former spouse. That conclusion was error.

■ OPM did not discharge its responsibilities with respect to the notification requirement of the Spouse Equity Act. The statute plainly gives OPM authority to prescribe the *manner* in which notice is to be given, but not the authority to *dispense* with that requirement. The OPM regulation which requires an applicant to certify whether he or she has a current or former spouse who is subject to the notification requirement is a reasonable and appropriate way for OPM to initiate the inquiry which must be undertaken in connection with that requirement. And it is reasonable to require, when an applicant acknowledges there is such a spouse, that the applicant notify that person of the intended withdrawal and its consequences.

However, when, as here, an applicant for a refund gives negative answers to questions asking whether the applicant has a current

or former spouse who is subject to the statutory notification requirement, OPM cannot simply rest there. At a minimum, OPM has a duty to verify those answers by a check of the appropriate records, in this case Lee's personnel file at the District of Columbia. Such a check would have revealed that, as of the date of Lee's application, there were several outstanding orders attaching Lee's salary for the purpose of satisfying delinquent child support payments to Muwwakkil. Thus, such a check would have revealed that his answer to Question 15 on the refund application form was incomplete, and probably untruthful.

In order for us to hold that OPM properly discharged its duties under the Spouse Equity Act in this case, we would have to conclude that Congress intended to allow the financial rights of one former spouse to be subject to the whim and caprice of the other, an inconceivable result given the acrimonious relationship that often exists between former spouses, and the economic motivation the one might have to misrepresent the existence and identity of the other. Such a holding also would eviscerate the very purpose of the statute—to protect former spouses of federal employees from unwittingly being denied support to which by law they may be entitled. *See* H.R.Rep. No. 98–1054, 98th Cong., 2d Sess. 10, 12, 13 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5540, 5540, 5542, 5543.

■ The Government on appeal argues that Muwwakkil "asks the Court to create protection and relief for her because the regulations do not do so." It may well be that the regulations do not do so, but it is clear that the statute does. When an agency's interpretation of a statute it is entrusted to administer is contrary to the intent of Congress, as divined from the statute and its legislative history, we owe it no deference. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 845, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984) (*quoting United States v. Shimer,* 367 U.S. 374, 382–83, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)).

Perhaps the Board was concerned with the burden that compliance with the notice requirement would place on OPM. First, that is a matter that Congress decided when it wrote the statute. Second, however, we do not believe that is a serious concern under the circumstances of this case. A simple cross-check between Lee's application and his agency personnel file would have uncovered the existence and identity of Muwwakkil. We may assume that some number of employees will wish to withdraw their contributions rather than take a retirement annuity, but even so it is not an undue burden to require OPM to check an employee's personnel file to verify the accuracy of negative answers to Questions 14 and 15 on the refund application form before allowing the employee to withdraw his or her retirement contributions. It is difficult to imagine how the statute could be honored with less. Moreover, while there could be cases in which further inquiry would be required, we expect—without deciding the issue—that such a record check will typically serve to discharge OPM's responsibilities under the statute.

## II.

■ Having held that OPM failed to discharge its responsibilities under the Spouse Equity Act, and that the Board erred in concluding otherwise, we are confronted with the question whether the failure of OPM to provide notice to Muwwakkil was harmful. On the record before us we are unable to answer that question.

■ As already discussed, the Spouse Equity Act provides that retirement contributions may be refunded only if any former spouse is notified of the refund application. The statute also provides that any refund which is made

shall be subject to the terms of a court decree of divorce, annulment, or legal separation or any court order or court approved property settlement agreement incident to such decree if—

(i) the decree, order, or agreement expressly relates to any portion of the lumpsum credit involved; and

(ii) payment of the lump-sum credit would extinguish entitlement of the employee's or Member's spouse or former spouse to a

survivor annuity under section 8341(h) of this title or to any portion of an annuity under section 8345(j) of this title.

5 U.S.C. § 8342(j)(1)(B). In pertinent part, section 8341(h) provides for a survivor annuity "to the extent expressly provided for ... in the terms of any decree of divorce ... or any court order or court-approved property settlement agreement incident to such decree." 5 U.S.C. § 8341(h)(1). For its part, section 8345 provides that an annuity payment, which otherwise would be paid to an employee based upon his or her government service, "shall be paid (in whole or in part) ... to another person if and to the extent expressly provided for in the terms of any court decree of divorce ... or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce...." 5 U.S.C. § 8345(j)(1). From this, we conclude that a former spouse, who has received notification of an application for a refund, must rely upon the relevant divorce decree or court order issued pursuant to that decree to bar payment of the refund.

It is undisputed that Muwwakkil's divorce decree did not give her either any survivor annuity rights or any rights to all or any portion of any annuity payments that would have been made to her former husband. Nor did it give her the right to receive any portion of Lee's retirement contributions upon his application for a lump-sum refund of such. As noted above, however, before the Board, Muwwakkil stated that, at the time of her divorce, she had not been aware "that an attachment of [retirement funds] could be made." She also stated that, "[w]ith knowledge of Mr. Lee's payment history I definitely would have included such a clause in the divorce decree." Assuming that Muwwakkil had been given timely notice of the proposed refund in 1991, it is not known whether at that time she would have sought, and could have obtained, a modification of the decree that would have given her rights with respect to Lee's retirement contributions.

This question is not before us at this time, however. Rather, it is for the Board in the first instance to determine whether Mu-

wwakkil was prejudiced by not being notified of the pending refund to Lee. Such a determination necessarily will involve an inquiry into whether, from the standpoint of the facts and law as they existed in 1991, Muwwakkil would have sought a modification of the divorce decree and if she had, whether such a modification could have been obtained under District of Columbia law.

Additionally, as seen above, before OPM and the Board Muwwakkil also asserted a claim on behalf of her children. On remand, in determining whether the failure to give Muwwakkil the statutory notification was harmful, the Board also should take this fact into account. Specifically, the Board should ascertain whether in 1991 Muwwakkil had standing to assert a claim on behalf of her children and if so whether such a claim would have had merit at that time. In the event the Board determines that Muwwakkil was in fact prejudiced, then the Board also should determine in the first instance what, if any, relief is available to Muwwakkil.

### CONCLUSION

We vacate the decision of the Board, and remand the case for further proceedings consistent with this opinion.[4]

### *VACATED AND REMANDED.*

### COSTS

Costs to be awarded to Muwwakkil.

ARCHER, Circuit Judge, dissenting.

I agree with the majority that OPM improperly failed to notify Ms. Muwwakkil of Mr. Lee's (her former husband) proposed withdrawal of his retirement deductions. Where notice is not given to a former spouse, OPM may be required to pay benefits to a former spouse even though it has fully distributed an employee's retirement deductions to the employee. That would be true in a case such as this if the divorce decree granted the former spouse an interest in the employee's retirement benefits.

---

4. We, of course, express no view on any of the questions we are directing the Board to address.

I do not agree, however, that this case should be vacated and remanded. The Administrative Judge (AJ) has already fully considered the issue of whether Ms. Muwwakkil or the minor children of Ms. Muwwakkil and Mr. Lee were entitled to any interest in Mr. Lee's retirement benefits and has correctly determined that she did not carry her burden of establishing entitlement.

For Ms. Muwwakkil to succeed in this action, she was required to prove by a preponderance of the evidence that she or the children were entitled to an interest in her former husband's retirement benefits. 5 C.F.R. § 1201.56(a)(2) ("In appeals from reconsideration decisions of the [OPM] involving retirement benefits, if the appellant filed the application, the appellant has the burden of proving, by a preponderance of the evidence, entitlement to the benefits."). After reviewing the record, including the divorce decree, the AJ found that Ms. Muwwakkil failed to show that either she or the children would have been entitled to an interest in the benefits, even if proper notification had been provided to her before OPM paid the benefits to her former husband. Thus, the AJ considered and decided all the issues for which the majority now remands this case.

As to Ms. Muwwakkil, the AJ found that in the divorce decree there was no provision granting her an interest in her former husband's retirement benefits, either by way of a survivor annuity or a death benefit. Absent a provision of this type in the divorce decree and absent a showing of any other basis for claiming an interest in these benefits, the AJ correctly determined Ms. Muwwakkil was not prejudiced by OPM's failure to notify her.

The AJ also determined that the minor children were not prejudiced as a result of OPM's failure to notify Ms. Muwwakkil because she "has not shown that the notification provision would apply ... to her children." Clearly, the notice provision is designed to protect former spouses, not the children, of an employee. Thus, the children cannot rely on Ms. Muwwakkil's statutory right to be notified. Further, Ms. Muwwakkil pointed to no statutory provision requiring OPM to notify an employee's children when that employee elects to withdraw retirement deductions.

This court reviews the AJ's decision, which became the final decision of the board, under a narrow standard of review. On this record, the AJ's determination that Ms. Muwwakkil did not prove entitlement to any interest in her former husband's retirement benefits was not arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence or otherwise not in accordance with the law. 5 U.S.C. § 7703(c). OPM's failure to give notice, although improper, has not been shown to be prejudicial to either Ms. Muwwakkil under the facts of this case nor to the children. Accordingly, the board's decision should be affirmed.